# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3890 | **DATE** | 8/27/2003 |
| **CASE TITLE** | Charise Pepper vs. Village of Oak Park and Oak Park Police Officer Leonard Donaire | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: For the foregoing reasons, the court grants summary judgment (Doc. 11-1) in favor of Donaire. Plaintiff's state law claim against the Village of Oak Park is dismissed without prejudice

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 8 2003 | 24 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8-27-03 date mailed notice | |
| ETV | courtroom deputy's initials | 03 AUG 27 PM 5:00 FILED FOR DOCKETING Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARISE PEPPER, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | |
| | ) | AUG 2 8 2003 |
| v. | ) No. 02 C 3890 | |
| | ) | |
| VILLAGE OF OAK PARK and | ) Judge Rebecca R. Pallmeyer | |
| OAK PARK POLICE OFFICER | ) | |
| LEONARD DONAIRE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charise Pepper brought this action under 42 U.S.C. § 1983, claiming that Defendant, Oak Park Police Officer Leonard Donaire, violated her Fourth Amendment rights when he allowed Pepper's estranged husband to enter her home and remove or damage her belongings. (Compl. ¶ 1, 5.) Because the court concludes that Donaire's conduct amounted, at worst, to negligence, however, Defendants' motion for summary judgment is granted. The court dismisses Pepper's state law claim against Defendant Village of Oak Park without prejudice.

## FACTUAL BACKGROUND

The Plaintiff, Charise Pepper, is a resident of the Northern District of Illinois. (Compl. ¶ 2.) Defendant Leonard Donaire is a police officer with Defendant Village of Oak Park, a municipal corporation in Western Cook County. (Defendant's Local Rule 56.1(a) Statement, hereinafter, "Def.'s 56.1(a)" ¶ 1.)

Plaintiff married John Redd ("Redd") in June of 1999. (Plaintiff's Local Rule 56.1(b) Statement, hereinafter, "Pl.'s 56.1(b)" ¶ 1.) In October of 2000, Plaintiff left Redd, who then resided in Arizona, and moved to Oak Park, Illinois, where she rented part of the residence at 244 South Clinton from her brother, Kenneth Pepper. (*Id.* ¶ 2.)

In December 2000, Plaintiff and Redd reconciled, and Redd moved in with Plaintiff at the

24

244 South Clinton home. (Pepper Dep., at 10-11.) Their relationship soon deteriorated again, however (Pepper Dep., at 13-16),[1] and in May 2001, police officers came to 244 South Clinton in response to a call in which Plaintiff reported that Redd had refused to leave as she requested and had threatened to abuse her physically. (*Id.* at 13.) Regarding the May 2001 incident, Plaintiff asserts: (1) that she showed police the lease, in her name only, to the 244 South Clinton property (*Id.* at 13-15); (2) that Redd refused to leave even after police arrived, and (3) that, ultimately, the officers "forcibly ejected" Redd from Plaintiff's home. (*Id.* at 15-16.) Defendants deny the relevance of these assertions, but offer no evidence to rebut them. (Defendant's Rule 56.1(a) Reply to Plaintiff's Additional Facts, hereinafter, "Def.'s Rule 56.1(a) Reply to Add. F." ¶ 5.) It is undisputed that when Redd did leave the premises, he asked the police officers when he could return to collect his property, and that one of the officers told him that he would need "a police escort to retrieve his property." (*Id.* ¶ 7.)

On the morning of June 1, 2001, Plaintiff testified that Redd phoned her and threatened that he was going to burn down her house and shoot out the windows. (Pepper Dep., at 49.) Plaintiff reported these threats to the Oak Park police that day and asked an unidentified officer to arrest Redd. (*Id.* at 50.) The officer instructed Plaintiff to obtain an order of protection against Redd. (*Id.* at 51.) That same day, June 1, 2001, Defendant Oak Park Police Officer Donaire was dispatched to 244 South Clinton to perform the "escort" duty, monitoring Redd's property retrieval. (Def.'s 56.1(a) ¶ 4.) When Donaire arrived at the scene, Plaintiff was not at home, but Redd and another man were present. (Donaire Dep., at 9.)[2] As Plaintiff emphasizes, Donaire acknowledges that he

---

[1] The parties dispute the relevance of Plaintiff's testimony of tumultuous relations between herself and Redd. (Pepper Dep., at 13-16.) For purposes of this motion, the court will view the record in the light most favorable to Plaintiff.

[2] Plaintiff claims that Donaire told her that "Redd was already in the Plaintiff's home when Donaire arrived" (Plaintiff's 56.1(b) Response to Defendant's 56.1(a), hereinafter "Pl.'s 56.1(b) Response" ¶ 11), but unfortunately cites as support page 36 of her own deposition—a page
(continued...)

2

made no "effort to find out where [Plaintiff] was at that time." (*Id.* at 19.) Donaire has testified that the side door, where Redd and the other gentleman entered the 244 South Clinton home, was ajar and did not appear to Defendant to have been opened forcibly. (Def.'s 56.1(a) ¶ 11.)

One of the two men identified himself to Donaire as John Redd ("Redd") and told Donaire that he was "in the process of getting a divorce from his wife." (*Id.* ¶ 6.) Redd explained that he wanted to retrieve certain items he had rented from a facility in Arizona. (Donaire Dep., at 10-11.) Redd showed Defendant several documents, including an Arizona marriage certificate and a typed copy of a lease, with the names "Sherry Redd and John Redd" on it, for "244 South Clinton." (Def.'s 56.1(a) ¶ 7.) Plaintiff notes that Defendant "did not do anything to determine" that the lease Redd showed Donaire was genuine (Pl.'s 56.1(b) Additional Facts, hereinafter "Pl.'s 56.1(b) Add. F.", ¶ 12.), and the parties have stipulated that any lease that Redd showed Donaire was a forgery, "since the authentic lease was in Plaintiff's name only." (Pl.'s 56.1(b) ¶ 5.)[3]

Redd also showed Defendant a rental agreement for various items of personal property from the Arizona rental facility. (Def.'s 56.1(a) ¶ 15.) In addition, Redd produced identification; through the LEADS computer system in his police car, Donaire verified that Redd resided at 244 South Clinton. (*Id.* ¶ 10.) Defendant also asked the police communications department whether there had been any recent police calls at the 244 South Clinton address and learned that there had been a disorderly conduct call that very morning. (Donaire Dep., at 14.) Regarding the disorderly conduct call, Defendant did not ask more about it, nor did communications staff elaborate further. (*Id.*) Donaire also checked Redd's Ford Explorer license plates, but the record does not indicate

---

[2](...continued)
that she did not include when appending part of her deposition as Exhibit 2 to Plaintiff's Response to Defendant's Rule 56 Statement. (*Id.*)

[3] Neither the alleged forgery nor any valid lease are part of the record in this case. As noted *infra*, the property owner (Pepper's brother) told police that no lease existed for the premises.

what, if anything, Donaire determined about Redd's vehicle from the license-plates check. (Id. at 27.) Finally, Defendant verified that there were no reported warrants outstanding, orders of protection, or signed complaints against Redd. (Id. at 15-16.)

During the approximately 15-minute period while Redd and his companion moved items from Plaintiff's home into Redd's vehicle, Defendant remained in front of the house, "to intervene if Charise Pepper[] were to return home. [Donaire's] purpose was . . . to prevent violence or an argument between the two spouses." (Def.'s 56.1(a) ¶ 13-14.) Defendant stayed in his squad car for part of the time, but he also left the car for at least a few minutes to monitor the removal of the property, making a list of the removed items. (Id. ¶ 13.) Redd took various items listed on the rental agreement (television, computer, printer). (Id. ¶ 15.) He also removed a television set not listed on the rental agreement and a bedroom set. (Id.)[4]

Between 5:00 and 6:00 p.m. on June 1, 2001, while at a beauty salon with her daughter, Plaintiff received a telephone call from Trina Simmons, the upstairs tenant at 244 South Clinton. (Pl.'s 56.1(a) Add. F. ¶ 18.) Plaintiff claims Simmons told her that Redd was removing "all of your stuff" and that police were on the premises. (Pepper Dep., at 23.)

After loading several items from Plaintiff's house into Redd's vehicle, Redd and his companion drove away from the scene, and Donaire himself left the premises. (Def.'s 56.1(b) ¶ 14.) Just five to ten minutes later, Defendant was dispatched back to 244 South Clinton, where he met the Plaintiff, who had returned home. (Def.'s 56.1(b) ¶ 16.) Identifying herself as Charise Redd, Plaintiff reported to Defendant that Redd had not only removed his property, but also had taken away various items of personal property belonging to Plaintiff and to her children. (Id. ¶ 19.)

---

[4] Defendants contend that the bedroom set that Redd removed was enumerated on the rental agreement, but Plaintiff maintains that the bedroom set belongs to her. (Pl.'s 56.1(b) Response" ¶ 15.) Neither party has submitted a copy of the rental agreement as an exhibit.

4

Plaintiff also reported that Redd had cut holes in her couches and pillows. (*Id.* ¶ 17.)[5]

At Plaintiff's prompting, Donaire then spoke by telephone with a man who identified himself as Kenneth Pepper, brother of Plaintiff and landlord of the 244 South Clinton premises. (Def.'s 56.1(b) ¶ 18.) It is undisputed that Mr. Pepper "advised Officer Donaire that there was no lease to the property." (*Id.*)

Following these events, Plaintiff brought this lawsuit under 42 U.S.C. § 1983, claiming that Donaire's conduct violated her Fourth Amendment rights. Defendants move for summary judgment, arguing that there was no unlawful search and seizure here. In the alternative, Defendants contend that "inaction" such as Donaire's is insufficient for liability, as the state and its agents have no duty to protect individuals from private harms. At a minimum, Defendants argue that Donaire has qualified immunity from a claim based on such a purported duty. (Defendant's Memorandum of Law in Support of Motion for Summary Judgment, at 1.) Lastly, Defendants ask the court to dismiss the state law claim against the Village of Oak Park pursuant to 28 U.S.C. § 1367(c) or grant summary judgment on the basis that Donaire's conduct was not "willful or wanton," but at most negligent. (*Id.* at 8-9.)

## DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, "summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003), quoting *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d

---

[5] The police evidence technician, who was sent to join Donaire at the scene, took some photographs of the damage to Plaintiff's couch. (Donaire Dep., at 25.) Neither party has submitted those photos as exhibits.

792, 795 (7th Cir. 2001).

In support of his motion for summary judgment, Defendant argues, first, that Plaintiff has not established a violation of her Fourth Amendment rights. If the Fourth Amendment is implicated here, Defendant urges, he is nevertheless not liable because the evidence does not show his direct personal involvement in the deprivation. Finally, Defendant argues that if there is a basis for a finding of liability here, he is entitled to dismissal of Plaintiff's claim based on qualified immunity. The court addresses these arguments in turn.

### 1. Were Plaintiff's Fourth Amendment Rights Implicated?

In support of her claim that Defendant violated her Fourth Amendment rights, Plaintiff cites Soldal v. Cook County, 506 U.S. 56 (1992). (Pl.'s Mem. Opp. Summ. J., at 1.) In Soldal, owners of a mobile home brought a § 1983 action against Cook County, sheriff's officers, and a trailer-park owner and manager, alleging that defendants conspired to seize and remove the plaintiffs' trailer home. 506 U.S. at 59. Prior to directing his staff to evict the plaintiffs, the trailer-park manager had called the Cook County sheriff's office and asked that sheriff's deputies monitor the eviction to avoid possible resistance by the plaintiffs. Id. at 55. During the course of the eviction, in the officers' presence, two trailer-park employees damaged the plaintiff's mobile home before hauling it away to a neighboring property. Id. at 58-59. Reversing a decision of the Seventh Circuit and remanding the case for trial on the plaintiff's Fourth Amendment claim against the Cook County deputy sheriffs, the U.S. Supreme Court concluded that the Fourth Amendment "protects property as well as privacy" and that the seizure and removal of the plaintiffs' mobile home did implicate their Fourth Amendment rights. Id. at 62, 72 (1992).

As in Soldal, Plaintiff Pepper's personal items were damaged or removed from her home, without her knowledge or consent. The damage and taking of Plaintiff's property amounted to "meaningful interference with [her] possessory interest in that property" and therefore did implicate

6

her Fourth Amendment rights. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The court concludes that Plaintiff's Fourth Amendment rights are implicated here.

### 2. Can the Challenged Private Action Be Imputed to Defendant?

Having established that the taking of Plaintiff's property warrants Fourth Amendment scrutiny, the court considers whether Redd's conduct is properly imputed to Donaire. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in the constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994), citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). In *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), the Seventh Circuit stated that, for an individual to be directly responsible for a constitutional violation, the defendant must be more than just negligent: The defendant "must know about the conduct and facilitate it, condone it, or turn a blind eye . . . ."

More than contending that Defendant simply knew about the conduct, Plaintiff asserts the conspiracy theory of liability that the Seventh Circuit had applied in *Soldal*. 923 F.2d at 1246-48, aff'd en banc, 942 F.2d 1073 (7th Cir. 1991), rev'd on other grounds, 506 U.S. 56 (1992).[6] Although the Seventh Circuit ultimately held that the plaintiffs were not entitled to relief for the damage done to the trailer, the Court of Appeals acknowledged the possibility that liability could rest on the fact that defendant's conduct effectively prevented plaintiff from exercising his right to defend his property. 923 F.3d at 1247-48. The court noted that the deputy sheriffs knew that the trailer park employees' actions were unlawful, and this constituted "indirect evidence of a conspiracy" between public officials and private citizens. *Id.* at 1246. The Seventh Circuit noted

---

[6] The Supreme Court did not discuss this theory in its review of the case. *See* 506 U.S. at 60 n.4 (simply noting the Seventh Circuit panel's conclusion that "a conspiracy must be assumed on the state of the record and, therefore, that the case must be treated in its current posture as if the deputy sheriffs themselves seized the trailer.") (citation and internal quotations omitted).

7

that Defendant Terrace Properties needed an eviction order to evict plaintiffs lawfully, and "the deputy sheriffs knew [that Terrace Properties] did not have one." *Id.* Thus, *Soldal* was "not a case of inaction." *Id.* at 1247. Likewise, the Supreme Court emphasized that the "deputy sheriffs knew that Terrace Properties did not have an eviction order and that its actions were unlawful." 506 U.S. at 59.

The instant case is unlike *Soldal*. First, there is no evidence that Donaire knew Redd's action was unlawful. Nor is there any indication that Donaire's presence was intended to facilitate Redd's removal of Plaintiff's property. The closest that Plaintiff comes to suggesting willful misconduct on his part is her assertion, based on Defendant's undisputed deposition testimony, that "Donaire did not do anything" to ascertain whether the lease that Redd displayed was authentic. (Pl.'s 56.1(b) Add. F. ¶ 12.) She does not suggest that he knew it was a forgery. To the contrary, the parties agree that "it never crossed Donaire's mind that Redd might be taking things from Plaintiff's home that did not belong to Redd." (*Id.* ¶ 16.) In light of the threats and altercations Plaintiff has alleged took place between her and Redd Donaire, he might have been more vigilant. Plaintiff herself was not even on the scene at the time, however, so there could be no threat to her personal security. Significantly, although Plaintiff emphasizes what Donaire did not do, the evidence shows that he did not ignore the issue of Redd's authority to enter the property. He reviewed a marriage certificate, a typed copy of a lease with Redd's name on it, a rental agreement for various items, and Redd's personal identification, which Defendant checked to verify whether there were no reported warrants, protection-orders, or signed complaints against Redd. (Def.'s 56.1(a) ¶¶ 7, 8, 10.) Even viewed in the light most favorably to the Plaintiff, the facts support Defendants' argument that Donaire was on the scene to supervise Redd's collection of property that Donaire believed he was entitled to retrieve, not to participate in an act that he knew to be unlawful. The fact that Redd took a television set that was not listed on the rental agreement does not alter this conclusion; there is no evidence that Donaire knew the television set did not

8

belong to Redd, nor any basis for finding that Redd and Donaire agreed to deprive Plaintiff of her property.

Nor can Plaintiff defeat summary judgment by arguing that this is a case of state action. Specifically, Plaintiff asserts that, "by sitting in police car outside of Plaintiff's home while Redd burglarized the home and destroyed property, Donaire facilitated the seizure of plaintiff's property." (Pl.'s Mem. Opp. Summ. J., at 7.) According to Plaintiff, Donaire's presence at the scene prevented Plaintiff and her neighbor from calling the police to stop Redd. (*Id.*) To support this claim, Plaintiff invokes the Seventh Circuit's conclusion in *Soldal* that the officers' presence prevented the plaintiff from exercising his statutory right as a tenant to defend his property. 923 F.2d at 1247-48.

Again, *Soldal* is distinguishable. In that case, the person being evicted from his trailer was, himself, present while his landlord's employees destroyed his valuable property. The court noted that he would have been within his rights to use mild force to prevent that destruction, and he certainly could have called on the police to obviate the need for such self-help. The police's presence at the scene, therefore, prevented Soldal from exercising his right to defend his property. *Id.* at 1247. In the instant case, however, Donaire's presence did not prevent Plaintiff from protecting her property, since the only party present who might have done so was Plaintiff's neighbor. Plaintiff has offered no evidence that, had Donaire not been standing by, Plaintiff's neighbor would have stopped Redd or, for that matter, that Simmons would have done any more than precisely what she did in Donaire's presence—place a call to alert Plaintiff of her estranged husband's activities. There is no basis to conclude that if Plaintiff had been present, Donaire would have been unreceptive to an entreaty to stop Redd. For these reasons, the court concludes that Plaintiff has failed to show that Defendant actively facilitated the alleged conduct.

Not surprisingly, Defendants frame this as a case of state inaction, citing *DeShaney v.*

9

*Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989).[7] (Def.'s Mem. Supp. Summ. J., at 1.) In *DeShaney*, the U.S. Supreme Court held that even after receiving a report that a parent is possibly abusing a child, state officials have no constitutional duty to intervene. 489 U.S. at 201. The Court concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 195-98 (emphasizing that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"). Defendants first assert that, under *DeShaney*, Donaire had no constitutional duty to protect Plaintiff, a private individual, from injury by another private individual, her estranged husband. Second, Defendants urge that Donaire's conduct amounted to "inaction," and therefore the state-created "danger exception" to the general *DeShaney* rule cannot apply. *Stevens v. Umsted*, 131 F.3d 697, 704-705 (7th Cir. 1997) (state-created danger exception requires "facts showing some *affirmative act* on the part of the state that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger"); *see also Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993) ("plaintiffs . . . may state claims for civil rights violations if they allege state action that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger [than] they otherwise would have been.").

Even if Donaire's conduct is understood as action, as in *Soldal*, rather than inaction, as in *DeShaney*, Plaintiff has failed to demonstrate that it was accompanied by the mental state

---

[7] Plaintiff also initially framed the case as such, in her Complaint alleging Donaire's "inaction." (Compl. ¶ 7.) The court notes that while *DeShaney* falls under the Supreme Court's substantive due process line of cases (and Defendant's brief treats this case as involving substantive due process), its reasoning is applicable here, where Plaintiff attempts to hold state actors liable for their failure to protect her property from an unreasonable seizure. Although the court concludes that Plaintiff has not successfully made out a case against Officer Donaire, she did choose the right course in framing it under Fourth Amendment. Any substantive due process claim would have required Pepper to demonstrate that her state remedies were inadequate. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003).

10

necessary to hold him liable for a constitutional violation. Plaintiff has demonstrated that Donaire was, at worst, negligent for failing to ensure that the lease was legitimate, or that Redd had a right to remove all of the property from the premises. If Redd indeed slashed Plaintiff's couch, then certainly this too is something that Donaire should have tried to prevent. But his failure to do so does not render him liable under applicable legal standards. The court therefore grants his motion for summary judgment.

3. **Has Defendant Established a Qualified Immunity Defense?**

Having concluded that Redd's private actions cannot be imputed to render Donaire liable, this court need not reach Defendant's alternative defense of qualified immunity.

### CONCLUSION

For the foregoing reasons, the court grants summary judgment (Doc. 11-1) in favor of Donaire. Plaintiff's state law claim against the Village of Oak Park is dismissed without prejudice.

ENTER:

Dated: August 27, 2003

REBECCA R. PALLMEYER
United States District Judge